IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORISSA BRIVCHIK, | : | |
| | : | C.A. No. ___ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| SLIPPERY ROCK UNIVERSITY, JERRY | : | |
| CHMIELEWSKI, AUDRA KESSLER, and | : | |
| DIANE FRNDAK, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

### Jurisdiction

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331 and § 1343(a)(3).

### Parties

2. The Plaintiff, Dorissa Brivchik, is an adult female who currently resides in the Western District of Pennsylvania.

3. The Defendant, Slippery Rock University, is located in the Western District of Pennsylvania.

4. The Defendant, Jerry Chmielewski, is an adult individual who is employed by Slippery Rock University and resides in the Western District of Pennsylvania.

5. The Defendant, Audra Kessler, is an adult individual who is employed by Slippery Rock University and resides in the Western District of Pennsylvania.

6. The Defendant, Diane Frndak, is an adult individual who was employed by Slippery Rock University during the relevant time period, and is believed to reside in the Western District of Pennsylvania.

**Facts**

7.  In 2016, Slippery Rock University instituted a new academic program entitled the Master of Science in Physician Assistant Studies (hereinafter "PA Program").  When the program was launched, the director of the program was Scott Massey PhD PA-C.

8.  Brivchik was accepted into the first cohort for the PA Program, and began taking the necessary didactic courses in the summer of 2016.  She had received her undergraduate degree from Shippensburg University in the spring of 2016.

9.  Brivchik did well in the didactic classes.  She achieved high grades and developed a firm grasp of the knowledge necessary to practice as a physician's assistant.

10. However, in spite of her success, there was a troubling development associated with her academic advisor.   Brivchik's advisor was Dr. Diane Frndak.

11. The advisor's role is to counsel students, help them over difficulties and meet with them periodically to discuss any problems the student might be encountering.

12. Frndak, however, veered off course from this task from the beginning.  Instead of focusing on Brivchik's academic experience and performance, Frndak seemed to be abnormally interested in Brivchik's personal life and activities outside of the PA Program.

13. Hence, when Brivchik would meet with Frndak, the conversation would veer into Brivchik's personal life.  Brivchik learned over the course of her didactic program that Frndak had apparently enlisted a couple of students to monitor the social and extracurricular activities of the PA students, including Brivchik.   Frndak's student collaborators would monitor Facebook and other social media sites for posts and

other activity by the PA Program students and then report back to Frndak.  Frndak seemed to take particular interest in Brivchik's extracurricular activities.

14. In this regard, when Frndak and Brivchik would meet for Frndak to ostensibly perform her counseling activities, Frndak would question Brivchik about the fact that Brivchik would frequently return to her parent's home in Lancaster on weekends.  Frndak pointedly questioned Brivchik about why she chose to study at home, and not at one of the facilities provided by the University. In sum, Frndak intruded into Brivchik's personal life in a far more pointed way than any of her other advisees.   These matters were totally unrelated to Frndak's advisory duties. Brivchik was alarmed and concerned about Frndak's inappropriate conduct in using students to spy on other students and felt very uncomfortable discussing her personal life with Frndak.

15. Frndak was also apparently receiving "reports" from her student collaborators about Brivchik and challenging Brivchik's personal decisions.  At one point, Frndak confronted Brivchik with the false accusation that Brivchik had passed out in an on-campus bathroom. Frndak's undercover sources had given her false information, which Brichik tried to correct during her conversation with Frndak; but Brivchik worried that Frndak was promoting false and destructive rumors.  Brivchik was convinced that Frndak's interest in her life was extraordinarily invasive of her privacy and a gross overstepping of her responsibility and authority.  After all, Frndak's opinion could carry weight in Brivchik's student career.

16. Consequently, Brivchik reported Frndak's inappropriate conduct to the program director, Dr. Massey, and advised him of her concerns with Frndak.  As a result of

her complaints, Frndak was removed as Brivchik's advisor and replaced with a new advisor.

17. Though Frndak was removed as Brivchik's advisor, she would intrude again, in Brivchik's academic and clinical experiences, as Frndak was in charge of making clinical assignments for the students' upcoming clinical rotations.

18. In February 2017, Brivchik began experiencing episodes of depression and anxiety. She went to the counseling center at Slippery Rock for assistance. Personnel at the counseling center claimed they were too full to take her on as a patient and gave her a list of outside providers.

19. In early May, Dr. Massey left Slippery Rock University. Brivchik and the other PA Program students began to have concerns that the program may lose its accreditation.

20. Brivchik also felt vulnerable and exposed following Dr. Massey's departure, as he had ensured that there would not be retaliation for her reporting of Frndak's conduct, and saw to it that Frndak would have no other involvement with Brivchik's student activities.  Once he departed, Brivchik feared that the remaining faculty might view her in a negative light.

21. Brivchik successfully completed her didactic studies and started the clinical portion of the PA Program.  The second year of the PA program involved rotating through various clinical experiences.  Thus, by May of 2017, Brivchik had successfully completed the didactic portion of the PA Program, and she was ready to transition into the clinical rotations.

22. Brivchik's concerns of retaliation were actualized once the clinic selection process began, because Frndak controlled or was involved in selecting the clinical sites for Brivchik's clinical rotations.

23. Prior to the beginning of the clinical rotations, the students were invited to make suggestions concerning the location of their clinical activities. In other words, they were actually afforded the opportunity to develop potential clinical sites, which would allow them to control or have a say in where they might be placed while completing their clinical rotations.

24. Many factors play a role in why a student might want to experience clinical rotations at a particular site.  The duration for each assignment was six weeks.  If the sites could not be accessed from one location, complex travel or living arrangements would have to be overcome.

25. Brivchik, who had grown up in the Lancaster area, wanted to have several clinical assignments in that area since her family still resided there.  This would facilitate her being able to live with her parents while engaging in at least a part of the clinical rotations.   To effectuate her desire to have clinical appointments in the Lancaster area, Brivchik secured the agreement of appropriate medical providers in the Lancaster area to supervise some of her clinical rotations.

26. This type of student involvement in locating clinical sites was actually encouraged by Slippery Rock.  In most cases, if a student went to the trouble of locating an appropriate clinical site and securing the site's agreement to supervise a clinical rotation, Slippery Rock would allow the student's choice to prevail.

27. This was not the case with Brivchik, since Frndak was one of the persons ultimately responsible for making the clinical assignments. Frndak rejected Brivchik's Lancaster choices.  The clinical sites imposed on Brivcjik were spread out over the Western Pennsyvania area.

28. At some point, Brivchik realized that she would have long commutes from her apartment in Slippery Rock to the various clinical assignments in the Pittsburgh region.  Brivchik requested that her clinicals be centralized in the Butler area.  This request was immediately denied by Ms. Kessler, who was one of the clinical coordinators.

29. There were other activities associated with the clinical rotation assignments that were foreboding and troubling for Brivchik along with all of the other students.   In April, Brivchik attended a "town hall" style meeting between students and faculty regarding the clinicals. The tone of the meeting was ominous.  It was announced that the students' professionalism would be scrutinized, that points may be deducted without the students knowing about it, that some of the students would fail and that based on statistics seven students would be dismissed from the PA Program.

30. On May 5, 2017, Brivchik visited her PCP and relayed her concerns about her stress and anxiety.  It was recommended that she get a pet, to calm her nerves.  She then obtained a dog to help her cope with stress.

31. On May 7, 2017, Brivchik began her first clinical rotation in the PA Program, which was in the emergency department of Butler Memorial Hospital.

32. Brivchik was evaluated at the end of her rotation with Butler Memorial Hospital.  The evaluation was submitted on June 9, 2017.  In the majority of the categories,

Brivchik was rated as exceeding expectations.  There were absolutely no negative comments about Brivchik in the evaluation.

33. On June 12, 2017, Brivchik began her clinical rotation at BMP Dermatology Associates, also located in Butler.

34. By virtue of the program's rules, each clinical site was supervised or fell within the responsibility of a particular faculty members.  As it turned out, Brivchik's second clinical rotation site, which was at the offices of the BMP Dermatology Associates, fell under Frndak's and Kessler's' supervision.

35. Frndak still harbored resentment towards Brivchik based upon Brivchik's prior reports about Frndak's bizarre and inappropriate behavior.  However, aside from her interference with Brivchik's efforts to secure convenient locations for her clinical rotation sites, supervision of this clinical rotation offered the first opportunity for her to have one-on-one control over Brivchik's fate.

36. On June 27, 2017, the preceptor for Brivchik's clinical rotation at BMP Dermatology Associates submitted a mid-rotation assessment of Brivchik's performance.  At that time, the preceptor noted that Brivchik's professional behavior was "excellent" and that her ability to perform clinical procedures was "very good."

37. Despite her success at her first clinical site, Brivchik felt discouraged, because she did not feel supported by the clinical team at Slippery Rock.

38. During the last week of June, Brivchik experienced a great deal of personal strife.  A close friend from high school overdosed and passed away.  She also learned that several other acquaintances either died of drug overdoes, or committed suicide.  It was around this time that her cousin died in a motor vehicle crash.  Her

grandmother's health was in decline.  In addition, Brivchik was experiencing

difficulties in moving from one apartment Butler to another in Pittsburgh.  Her

family's vehicle broke down, requiring her to acquire a new vehicle.

39. As a result of all these stressful events, Brivchik became overwhelmed and

depressed.  On Monday, June 26th, Brivchik woke up and felt as though it was

impossible to get out of bed and face the world.  She could not bear the idea of

leaving her house and being around other people.  She felt the same way the

following day.  As a consequence, she did not report to her clinical rotation on June

26th and June 27th.

40. Each day she was absent, Brivchik contacted her preceptor, via his PA, and notified

him that she would be unable to report to her clinical.

41. Brivchik reported to her clinical assignment the next three days, June 28th-30th.

42. On June 30th, Brivchik met with her preceptor, who asked about her absences.

Brivchik apologized and explained that there was a lot going on in her personal life.

43. The following Monday, July 3rd, Brivchik submitted her time for the prior week.  She

faced the quandary of reporting her attendance.  She impulsively decided to claim

that she had attended her clinical site on the 26th and the 27th.

44. Brivchik knew she needed to accurately report her hours.  She was nevertheless

hesitant to report her absences on June 26th and 27th, because she felt the clinical

team, which at this point, included Frndak, would not be receptive to her personal

issues and the attenuate depression and anxiety.  She feared that she would be

disciplined.  She also feared disclosing personal issues to Frndak, and was

uncomfortable in having any personal contact with Frndak.  So, after debating the

matter with herself, she decided to misrepresent her hours and resolved that it would never happen again.  She hoped the issue would pass.

45. It is believed that Frndak and Kessler spoke to Brivchik's preceptor and became aware of Brivchik's inaccurate time records.

46. On July 7, 2017, Brivchik was summoned by Allison Wix, to meet with several faculty members from the PA Program's clinical team, including Ms. Audra Kessler, Dr. Diane Frndak and Ms. Megan Borger.  Wix told Brivchik that she did not know what the meeting was about.  Brivchik explained what had happened.

47. Brivchik received no written notice about the meeting, nor any written notification or explanation about what topics were going to be discussed at the meeting. Instead, Brivchik's sole notification consisted of the phone call from Ms. Wix the night before that merely conveyed the time and place of the meeting.

48. As it happened, the meeting was called to confront Brivchik over the discrepancy in her time records and to impose a punishment or discipline for the matter.

49. Brivchik had no prior disciplinary issues.  As a result, she had no idea what to expect at the meeting or how to navigate Slippery Rock's disciplinary process.

50. During the course of the July 7th meeting, Brivchik learned for the first time that she was being accused of academic integrity violations.  The faculty members asked Brivchik about events that had transpired during the prior week at her clinical rotation. Brivchik was very contrite and admitted that her conduct was not acceptable. Brivchik acknowledged that she would benefit from attending therapy. She also offered to explain that she was under a great deal of stress at the time.  She would have, if given the opportunity, assured the faculty members that her actions

were an aberration caused by her depression and anxiety.  She was also prepared to discuss the reasons for her conduct, including her reluctance to discuss personal matters with Frndak.  However, she was cut off before she could offer an explanation and told that the meeting was over.  She was not allowed to offer any defense or mitigating factors to persuade the panel to exercise leniency.

51. Because the faculty members at the July 7th meeting ended the discussion before Brivchik could discuss her mental health needs and experiences, there was no discussion regarding her mental health, her efforts and requests for assistance, and there was no discussion by any of the Defendants in the nature of possible accommodations.  Instead, as will be described below, Brivchik was summarily dismissed from the PA Program by virtue of the failing grade awarded by Frndak.

52. Hence, Brivchik later learned from Wix that the clinical team assigned failing grade. Brivchik believes that Frndak was responsible for giving the failing grade for this clinical experience due to her stature in the hierarchy of the program. The grade was assigned without ever hearing Brivchik's explanations.

53. After the meeting with the clinical team, Brivchik returned to her clinical rotation. After she was at the clinical site for an hour or so, Brivchik received a phone call from Kessler letting her know that she was suspended, effective immediately, from her clinical rotation, and that she must leave the premises.  Kessler also sent Brivchik an email conveying the same information and instructing her to await further instruction.

54. On July 10, 2017 Brivchik received an emailed letter from Ms. Leigh Ann Gilmore of the Office of Student Conduct stating that Brivchik had failed a rotation and was

being dismissed from the PA program. This was the first written notice Brivchik had

of decision assigning the failing grade. Gilmore also noted in the letter that Brivchik

could request a hearing through the Office of Student Conduct within five business

days.

55. Brivchik emailed Kessler about the letter from Gilmore, who reiterated that Brivchik

was receiving a failing grade for the clinical rotation and therefore being dismissed

from the PA program.

56. The following day, July 11th, Brivchik emailed Gilmore and requested a hearing.

57. Gilmore responded that same day and informed Brivchik that she was not entitled

to a hearing.  Instead, Gilmore instructed Brivchik to contact Dr. Jerry Chmielewski;

the Dean of the College of Health, Environment and Science; and file a written

petition for reinstatement.

58. Thus, Brivchik was never given the hearing or an opportunity to contest the clinical

team's decision.  Instead, she was advised that the decision to remove her from the

PA Program was irrevocable, and that her only option was to petition to be

reinstated in the program.

59. Based upon Gilmore's instructions, Brivchik submitted a timely petition for

reinstatement to Dr. Chmielewski on August 9, 2017.  In her petition, Brivchik

expressly noted that she was suffering from depression and anxiety and requested

accommodations.

60. On September 6, 2017, Brivchik supplemented her petition for reinstatement, and

provided Chmielewski with a copy of a recent psychological evaluation that

confirmed that Brivchik was diagnosed with anxiety and depression.  The letter

accompanying the evaluation also stated that Brivchik was seeing a therapist and that she wanted to create a future plan of action to insure her success in the PA Program.

61. Thus, by this time, the Defendants had received several requests from Brivchik asking to initiate a dialogue about potential accommodations.  These requests were all disregarded.

62. By way of a letter dated September 13, 2017, Chmielewski denied Brivchik's petition for reinstatement to the PA program.

63. In his letter denying Brivchik's request for reinstatement, Chmielewski noted that the PA program "requires that PA's practice without impairment from substance abuse, cognitive deficiency, or mental illness." He also noted his belief that Brivchik's psychological evaluation "identifie[d] low average cognitive flexibility and inconsistent cognitive efficiency."

64. Chmielewski provided no additional explanation for denying Brivchik's petition for reinstatement.

65. In sum, Chmielewski concluded that Brivchik's diagnosis of depression and anxiety made her unfit for the PA Program.  Thus, Chmielewski perceived Brivchik's depression and anxiety as disabling, and concluded that she was not fit to practice as a PA.

66. Based upon the PA Program policies, the highest level of appeal is to the academic dean, which in this case, is Chmielewski.  Accordingly, there is no further internal appeal available to Brivchik to contest her dismissal from the PA Program.

67. Although Brivchik and her parents visited with Chmielewski following his decision to deny Brivchik's petition for reinstatement, there was never any dialogue between Brivchik and Chmielewski as to possible accommodations.

68. In the PA Program handbook, Slippery Rock acknowledges its obligation to accommodate students with disabilities. The handbook states as follows:

> The Slippery Rock University MSPAS program is committed to the education of all qualified individuals, including persons with disabilities who, with or without reasonable accommodation, are capable of performing the essential functions of the educational program in which they are enrolled and the profession that they pursue.
>
> It is the policy of the program to comply with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and state and local requirements regarding students and applicants with disabilities. Under these laws, no otherwise qualified and competent individual with a disability shall be denied access to or participation in services, programs, and activities solely on the basis of the disability.

69. Accordingly, the PA Program handbook provides that once a student "states inability to meet all the technical standards without accommodation, Slippery Rock University will determine whether the student can meet the technical standards with reasonable accommodation."

70. In discussing the technical standards required for the PA Program, the handbook provides the following: "These technical standards are required for admission and must be maintained throughout a student's progress through the Physician Assistant Program. In the event that a matriculated student is unable to fulfill the technical standards, with or without reasonable accommodations, the student may be counseled to pursue alternate careers."

71. Thus, the Defendants' decision to summarily dismiss Brivchik from the PA program with first discussing accommodations or alternative career paths is inconsistent with the policies of the PA Program.

### Causes of Action

**Count I - Disability Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973 - 29 U.S.C. § 794**

**Brivchik v Slippery Rock University**

72. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

73. Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability in the United States . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . "  29 U.S.C. § 794(a).

74. Slipper Rock University participates in Federal student aid programs that are authorized under Title IV of the Higher Education Act of 1965. Thus, Slippery Rock is an entity which receives federal grants and therefore is subject to the requirements of the Rehabilitation Act.

75. Brivchik suffers from a disability.  She had been clinically diagnosed with generalized anxiety disorder and unspecified depressive disorder.

76. As detailed above, prior to the events that occurred in late June 2017, there was no question about Brivchik's ability to complete the technical requirements of the PA Program.  She had successfully completed the didactic portion, as well as her first

clinical rotation.  Thus, Brivchik had established that she was qualified to be a student in the PA Program.

77. The PA Handbook explicitly acknowledges that students enrolled in the PA Program may request reasonable accommodations if they are unable to meet all of the technical standards of the programs without accommodation.

78. After the events that occurred in late June 2017, Brivchik notified the Defendants of her disability and requested accommodations in the form of therapy and the opportunity to create a plan to insure her continued success in the PA Program.

79. Despitethe mandates of the PA Handbook, there were no attempts to discuss reasonable accommodations with Brivchik or determine a plan of action.

80. Instead, Brivchik's requests for reasonable accommodations were ignored, and her petition for reinstatement was explicitly denied because of her disability.

81. Moreover, Chmielewski made clear that his decision was based on his perception that Brivchik's disability made her unfit to practice as a PA.  Thus, his perception was that Brivchik suffered from a disabilty that was too severe to be accomodated, and would not allow her to perform the functions necessary to complete the PA Program and practice as a PA.  This assumption was unfounded and simply wrong.

82. Therefore, the Defendants discriminated against  Brivchik based on her disability or by the erroneous perception that Brivchik lacked the ability, with or without approprate accomodations, to participate in and complete a field of study soley by reason of her disability.

WHEREFORE, Plaintiff demands judgment in her favor against the Defendants and an award of all remedies available to her under the law.  She seeks compensatory damages,

counsel fees, costs, equitable relief, and such other relief as the Court determines to be just and appropriate.

## Count II – Procedural Due Process

## Violation of 42 U.S.C. § 1983

## Brivchik v Frndak, Kessler and Chmielewski

83. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

84. The Defendants herein acted under color of state law.  Their treatment of Brivchik arose out of their performance of their duties at Slipper Rock University, which is a university within the state supported higher education system.

85. Brivchik had a state created property interest in participating in and completing the PA program.  This property interest arose from her payment of tuition and the rules and regulations of the University and PA Program.

86. Brivchik was never afforded proper notice of the charges against her, given the seriousness of the potential consequences, nor a hearing to refute the allegations against her prior to her suspension and dismissal from the PA Program.

87. Instead, Brivchik was orally summoned to an informal meeting with the clinical team on July 7, 2017, without any prior explanation of what was to be discussed.

88. Brivchik was given no meaningful notice of what was going to be discussed at the July 7, 2017 meeting with the clinical team.

89. Because she received deficient prior notice of the July 7th meeting, Brivchik was unprepared to defend herself or explain her actions.

90. Due to the deficient notice, Brivchik was also denied the opportunity to summon witnesses on her behalf or to provide documentation in support of her claims.

91. The procedurally deficient July 7, 2017 meeting served as the sole basis for Brivchik's suspension and dismissal from the PA Program.

92. Frndak's participation in the decision-making process was a further deprivation of procedural due process, since she was knowingly biased against Brivchik.  Hence, because Brivchik had previously reported her misconduct, Frndak was not a fit or impartial judge.

93. The conduct of the individual Defendants deprived Brivchik of  her property interest without affording her meaningful procedural due process.

94. By virtue of their acting under color of state law, these Defendants violated Brivchik's rights under 42 U.S.C. § 1983, which secures her right to procedural due process guaranteed by the 14th Amendment to the United States Constitution.

WHEREFORE, Plaintiff demands judgment in her favor against the all the Defendants and an award of all remedies available to her under the law.  She seeks compensatory damages, counsel fees, costs, equitable relief, and such other relief as the Court determines to be just and appropriate.

### Count III – Retaliation for First Amendment Activity

### Claim Under 42 U.S.C. § 1983

### Brivchik v. Frndak and Kessler and Chmielewski

95. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

96. Brivchik engaged in protected speech when she voiced concerns about the way her initial advisor, Dr. Diane Frndak, was treating Brivchik and other PA students.

97. Brivchik informed the PA Program Director that Frndak employed two students to essentially spy on other PA Program students. These two students were tasked with monitoring student attendance at classes as well as reporting on the social media activity of the other PA students.

98. Brivchik also reported that Frndak seemed to be uncomfortably familiar with her personal habits. Brivchik detailed Frndak purported concerns about Brivchik being quiet, not studying at school and not interacting with her classmates. Frndak also falsely accused Brivchik of throwing up and then passing out in an on-campus bathroom. By virtue of making these reports, Brivchik was engaging in protected activity as well as petitioning the government for relief from Frndak's inappropriate conduct.

99. Frndak's misconduct in employing student spies and attempting to intrude into the privacy of Slippery Rock's students is a significant matter of misconduct.

100. After Brivchik notified the PA Program Director about her concerns with Frndak, Brivchik was assigned a new advisor.

101. However, Frndak was placed in a position to make decisions affecting Brivchik's academic career.

102. Thereafter, Frndak treated Brivchik in an adverse manner.

103. Frndak rejected Brivchik's attempts to set up clinical rotations in the Lancaster. Instead, Frndak assigned Brivchik clinical rotations covering a large area

in Western PA, and Cleveland. She did this in retribution for Brivchik's protected activity. The clinical requests of other students were honored.

104.     In addition, Frndak participated in the July 7th meeting, and it is believed that she is the individual who recommended that Brivchik be given a failing grade and dismissed from the PA Program.

105.     Kessler acted in concert with Frndak to ensure that Brivchik would receive a failing grade and be dismissed from the PA program. Chmielewski was aware of Brivchik's exercising protected activity.

106.     The conduct of these Defendants caused injury to Brivchik and was prompted by and meant to injure Brivchik in retaliation for Brivchik's first amendment activities.

107.     Frndak, Kessler and Chmielewski were acting under color of state law. Their conduct deprived Brivchik of rights secured her by the First Amendment to the Constitution and hence violated 42 U.S.C. § 1943.

WHEREFORE, Plaintiff demands judgment in her favor against Defendants Kessler, Frndak and Chmielewski and an award of all remedies available to her under the law. She seeks compensatory damages, counsel fees, costs, equitable relief, and such other relief as the Court determines to be just and appropriate.

### Count IV

### Claim Under 42 U.S.C. § 1983 – Violation of Equal Protection

### Brivchik v Chmielewski

108.     Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

109.     Chmielewski at all times acted under color of state law in connection with carrying out the activities alleged in this Complaint.

110.     Chmielewski discriminated against Brivchik and violated her rights under 42 U.S.C. § 1983, because his conduct deprived her of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

111.     Chmielewski's decision to deny Brivchik readmission into the program was based solely by virtue of the fact that he viewed her as too disabled to participate in the PA program.

112.     In this regard, he singled Brivchik out, treated her arbitrarily and denied her equal protection of the law.  His refusal to readmit her to the PA Program is based solely on stereotypical views of individuals who suffer depression, and was not based on any rational foundation.

### Injuries

Brivchik suffered the following injuries as a result of conduct of the Defendants.  (1) She has been deprived of the opportunity to complete the PA program; and, (2) a consequence loss of earning potential and economic opportunity; (3) she has suffered severe emotional distress, anxiety, embarrassment and humiliation.

### Damages

Brivchik is entitled to compensatory damages and equitable relief in the nature of being reinstated into the PA Program.  The individual Defendants acted willfully and deliberately to deprive Brivchik of rights guarantied by the 1st and 14th Amendments to the United States Constitution.  Consequently, they are liable for compensatory and punitive damages.

Wherefore, Brivchik requests the Court grant her all of the relief to which she is entitled including equitable relief, monetary damages, punitive damages against the individual defendants and counsel fees and costs.

Respectfully Submitted,

/s/ Edward A. Olds

Edward A. Olds, Esquire

PA ID No. 23601
Olds Russ
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
Phone (412) 492-8975
*ATTORNEY FOR PLAINTIFF*